IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SCHARLENE J. ADAIR,

    Plaintiff,

v.

                          NO. CIV 97-1514 MV/RLP

THE BOARD OF REGENTS OF
THE UNIVERSITY OF NEW
MEXICO and LINDA SUYDAM,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed January 25, 1999 **[Doc. 35]**. The Court, having considered the motion, response, reply, relevant law and being otherwise fully informed, finds that the motion will be **GRANTED IN PART** and **DENIED IN PART**, as explained below.

### BACKGROUND

Plaintiff, Scharlene J. Adair ("Adair") brings suit against her former employer, The Board of Regents of the University of New Mexico ("Board") and her former supervisor, Linda Suydam ("Suydam"), alleging retaliatory discharge in violation of Title VII, the New Mexico Human Rights Act, and 42 U.S.C. § 1983.

## A. Undisputed Material Facts

For the purpose of resolving this motion, the Court finds that the following are the undisputed facts[1]:

1. Adair worked as a staff assistant to Suydam in a University of New Mexico department from November 1995 to February 1997.

2. Adair complained to several University employees of fiscal mismanagement in the office, sexually harassing behavior by a coworker towards her and others, and the failure to follow equal employment laws in hiring. Specifically, Adair states the following: (1) she raised concerns over the acquisition of unnecessary furniture and the failure to follow proper procedures in acquiring the furniture with the director of facilities planning and the interim associate vice president for business and finance; (2) she reported sexual harassment by a coworker to an employee of the equal opportunity program and the director of marketing; and (3) she reported to an employee of the equal opportunity program that applicants for employment were being asked illegal questions regarding their age and marital status. The pleadings do not indicate when these complaints were made.

3. In two letters to Adair, dated January 6, 1997, and February 28, 1997, Suydam stated that Adair was being terminated as a result of her unauthorized use of a University vehicle and her unauthorized establishment and use of a Westlaw account.

---

[1] Defendants ask this Court to completely disregard Plaintiff's affidavit, submitted in support of her Response to Defendant's Motion, as nothing more than hearsay and conclusory allegations unsupported by facts within Plaintiff's personal knowledge. The Court has in fact disregarded those portions of the affidavit which are hearsay or are conclusory allegations not within the personal knowledge of Plaintiff. *See* Fed.R.Civ.P. 56(e); *Jackson v. Griffith*, 480 F.2d 261, 268 (10th Cir.1973). However, the Court has considered those portions of the affidavit which are statements of fact within the Plaintiff's personal knowledge. Specifically, the nature of the complaints made by Plaintiff and who she made the complaints to is information within her personal knowledge which has been considered by the Court.

4. Adair filed a charge of discrimination with the New Mexico Human Rights Division against the University but not against Suydam as an individual.

**B. Disputed Material Facts**

For the purpose of resolving this motion, the Court finds that the following are the disputed material facts:

1. The central dispute between the parties is the reason for Plaintiff's termination. Plaintiff asserts that she was fired as a result of her complaints regarding her perceived fiscal mismanagement in the office, violation of equal employment laws, and sexual harassment. Defendants assert that Plaintiff was fired as a result of her unauthorized use of a University vehicle and her unauthorized establishment and use of a Westlaw account.

2. Defendant Suydam asserts that she did not know of any Plaintiff Adair's complaints until after the decision to terminate Adair was made. Plaintiff contends that she made her complaints directly to Suydam and that Suydam even complained to Plaintiff about her criticisms of Suydam. Specifically, Adair states the following: (1) she complained to Suydam about a particular fund raising event which Adair felt was being arranged in violation of the rules for purchasing and contracting, in August of 1996; (2) she complained to Suydam about the purchase of desks, chair, and other items which she found unnecessary and which she believed were being purchased without following the required procedures; and (3) she reported to Suydam sexual harassment by a coworker.

3. Defendant Suydam asserts that she did not authorize Plaintiff to establish a Westlaw account, but that Plaintiff accomplished this by signing Suydam's name to an inter-office memorandum. Plaintiff responds that Suydam did authorize her to open the account and that Suydam frequently gave Adair authority to sign her name.

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

4

**ANALYSIS**

Defendants move for summary judgement on the following grounds: (1) the Board is not a proper defendant to a § 1983 claim and that Suydam likewise cannot be sued in her official capacity under § 1983 as an employee of the Board; (2) Suydam is not a proper defendant to the Title VII or New Mexico Human Rights Claims; (3) Plaintiff cannot establish that her speech was protected activity for the purposes of the § 1983 claim; and (4) Plaintiff cannot establish a causal link between her protected speech and her termination sufficient to establish retaliation. The Court will address these arguments in turn.

   1.   **Proper Defendants to §1983 Claim**

Plaintiff concedes that the Board and Suydam in her official capacity cannot be sued under § 1983. Accordingly, the Court will grant that portion of Defendants' Motion and dismiss the § 1983 claim as to the Board and as to Suydam in her official capacity.

However, Plaintiff contends that Suydam may be sued pursuant to § 1983 in her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Defendants provide no argument to the contrary other than to state that Plaintiff did not specify in her Complaint that Suydam was being sued in her individual capacity. Failure to specify whether a § 1983 claim is being pursued against the defendant in his or her official or individual capacity is not a proper grounds for dismissing the claim. *See Pride v. Does*, 997 F.2d 712 (1993). Therefore, the § 1983 claim against Suydam in her individual capacity remains properly before the Court.

   2.   **Suydam as a Defendant to Title VII and Human Rights Claim**

Plaintiff concedes that Suydam in not a proper defendant under Title VII. Accordingly, the Court will grant that portion of Defendants' Motion and dismiss the Title VII claim as to Suydam.

5

However, Plaintiff asserts that Suydam is a proper defendant under the New Mexico Human Rights Act. NMSA 1978, Sections 28-1-1 to -15 (Repl.Pamp.1991). While Plaintiff is correct that an individual supervisory employee may be sued under the Human Rights Act, the New Mexico Supreme Court has held that "individual defendants cannot be sued in district court under the Human Rights Act unless and until the complainant exhausts her administrative remedies against them." *Luboyeski v. Hill*, 117 N.M. 380, 382-83 (1994). "[C]ompliance with the grievance procedure in the Human Rights Act is a prerequisite to suit in district court under the Act: The comprehensive nature of the Act supports the conclusion that the legislature intended that the grievance procedure is mandatory when unlawful discriminatory practices are alleged." *Id*. at 383 (citations and quotation marks omitted).

In the present case, Plaintiff's administrative grievance with the New Mexico Human Rights Division named the University but did not name Suydam personally. Thus, because Plaintiff has not exhausted her administrative remedies against Defendant Suydam, she is not a proper defendant to the Human Rights Act claim. Therefore, the Human Rights Act count will be dismissed as to Defendant Suydam.

### 3. Plaintiff's Speech as Protected Activity

Plaintiff's remaining § 1983 claim against Suydam in her individual capacity is based on the premise that Plaintiff was terminated for engaging in protected speech activity, in violation of her First Amendment rights. Defendants argue that Plaintiff cannot establish that her speech was protected speech, addressing a matter of public concern.

"In order for a public employee to prevail on a claim that her dismissal violates protected speech rights, the court must first determine that her speech is protected by the First Amendment. The

6

First Amendment protects a public employee's speech when it involves a matter of public concern." *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996); *Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Hom*, 81 F.3d at 974 (*quoting Connick v. Myers*, 461 U.S. 138, 146 (1983); *Horstkoetter*, 159 F.3d at 1271. "If the matter is of merely personal interest to the government employee, then the speech is not protected by the First Amendment." *Horstkoetter*, 159 F.3d at 1271. "To determine whether speech is of public concern, a court must examine the 'content, form and context of a given statement, as revealed by the whole record.'" *Paradis v. Montrose Memorial Hospital*, 157 F.3d 815, 818 (10th Cir. 1998) (*quoting Connick*, 461 U.S. at 147-48).

Here, Plaintiff asserts that she complained to Suydam, her supervisor, and other supervisory employees at the University regarding fiscal mismanagement, violation of equal employment laws, and sexual harassment by another coworker. The Tenth Circuit has recognized these topics as matters of public concern. *Paradis*, 157 F.3d at 818. In the recent case of *Paradis*, two nurses in a public hospital complained to their supervisors and hospital administrators that a particular doctor "based patients' treatment on their ability to pay, practiced medicine without a license, engaged in insurance fraud, subjected patients and staff to religious harassment, and sexually harassed staff." *Id*. The Tenth Circuit stated simply, "[t]hese are self-evidently matters of 'political, social, or other concern to the community.'" *Id*. (*citing Schalk v. Gallemore*, 906 F.2d 491, 495-96 (10th Cir.1990) (holding that employee letter addressing, inter alia, "waste, inefficiency, and favoritism" at public hospital touches on matters of public concern)). The court continued, stating "[w]e reject appellants' contention that such allegations are better characterized as personal grievances. The two nurses cannot reasonably be said to have had a purely personal interest in stopping appellant [doctor] from basing patients'

7

length of stay on their financial resources, nor in stopping the religious harassment of patients and staff and the sexual harassment of other staff." *Id.* (*citing Patrick v. Miller*, 953 F.2d 1240, 1247 (10th Cir.1992) (holding that employee's statements made to protect colleague from discrimination are not properly characterized as personal grievance)). Further, the court rejected the "argument that public employees are not protected by the First Amendment unless they 'go public' with their allegations or bring them to the attention of a directorial board." *Id.* (*citing Givhan v. Western Line Consolidated Sch. Dist.*, 439 U.S. 410, 415-16 (1979) (noting that a public employee does not lose his First Amendment rights when he chooses to communicate privately with his employer rather than spread his views before the public)).

Pursuant to *Paradis, supra*, 157 F.3d at 818, the speech described here– complaining of fiscal mismanagement at a public university, violations of equal employment laws, and sexual harassment by a coworker, all communicated to supervisors– plainly addresses matters of public concern and therefore falls within the protection of the First Amendment. *Id*.

Defendants complain that Plaintiff has not described the alleged speech with sufficient particularity for the Court to meaningfully "examine the 'content, form and context'" of the statements. *See Paradis*, 157 F.3d at 818. Yet, the undisputed facts reveal that Plaintiff (1) raised concerns over the acquisition of unnecessary furniture and the failure to follow proper procedures with the director of facilities planning and the interim associate vice president for business and finance; (2) reported sexual harassment by a coworker to an employee of the equal opportunity program and the director of marketing; and (3) reported to an employee of the equal opportunity program that applicants for employment were being asked illegal questions regarding their age and marital status. Moreover, viewing the facts in the light most favorable to Plaintiff, the non-moving party, the record also reveals that Plaintiff (1) complained to Suydam, her supervisor, about a

8

particular fund raising event which she felt was being prepared in violation of the rules for purchasing and contracting, in August of 1996; (2) complained to Suydam about the purchase of desks, chair, and other items which she found unnecessary and which she believed were being purchased without following the required procedures; and (3) she reported to Suydam sexual harassment by a coworker. While the timing and exact words of these statements has not been specified, the record sufficiently demonstrates that the content, form and context of these statements bring them within the realm of public concern, as recognized in *Paradis, supra*, 157 F.3d at 818.

Therefore, that portion of Defendants' Motion for Summary Judgment based on the assertion that Plaintiff's speech was not protected will be denied.

### 4. Causal Link Between Speech and Termination

Finally, Defendants assert that Plaintiff cannot establish a causal connection between her protected activity and the termination sufficient to demonstrate retaliation under either the § 1983 claim or the Title VII/ Human Rights Act claim. A causal connection between the plaintiff's protected activity and the termination is an element of the plaintiff's *prima facie* case in a claim of retaliation under both Tittle VII and § 1983. *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998); *Hom*, 81 F.3d at 974.

At this time, the Court cannot grant summary judgment on this basis as there is a genuine dispute regarding the material facts relevant to this issue. Defendants claim that there can be no connection between the termination and the protected activity because Suydam did not know of Adair's protected activity prior to the decision to terminate and terminated Adair for legitimate reasons, specifically for unauthorized use of a University vehicle and unauthorized establishment and use of a Westlaw account. Plaintiff asserts that Suydam did know of her protected activity as some

9

of her complaints were made directly to Suydam, and that Suydam approved of the Westlaw account. Both parties have presented no evidence other than the affidavits of Adair and Suydam. Thus, the Court is here presented with a classic swearing contest; resolution of this dispute must be left to the jury.

Moreover, viewing the facts in the light most favorable to Plaintiff, the non-moving party, Plaintiff has presented sufficient facts to demonstrate a nexus between her protected activity and her termination to survive Defendants' Motion for Summary Judgement. Plaintiff Adair states that she complained about fiscal mismanagement and sexual harassment directly to Suydam and that Suydam even confronted Adair about her criticisms of Suydam's management style.[2] Suydam was thus aware of Adair's protected activity. Further, Plaintiff states that Suydam authorized the Westlaw account, demonstrating that the proffered legitimate reason for her termination is pretextual. The record is unclear as to how close in time Plaintiff's protected activity was to her termination. However, this evidentiary gap is alone insufficient to demonstrate that Plaintiff cannot establish that her termination was pretextual. Plaintiff's evidence of protected activity, known to her supervisor, combined with animosity from her supervisor as a result of that activity, and evidence that the proffered reason for termination is pre-textual, is sufficient to create a jury issue as to whether there is a causal connection between Plaintiff's termination and her protected activity.

Therefore, the portion of Defendants' Motion for Summary Judgment based on the lack of a causal connection between her protected activity and her termination will be denied.

## CONCLUSION

---

[2]The Court notes that Suydam's statements to Adair are not hearsay as they are admissions of a party-opponent. Fed.R.Evid. 801(d)(2).

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **[Doc. 35]** is hereby **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Second Cause of Action, alleging violations of Tittle VII and the New Mexico Human rights Act, is hereby **DISMISSED** as to Defendant Suydam. Plaintiff's Third Cause of Action, alleging a violation of § 1983, is hereby **DISMISSED** as to Defendant Board of Regents and Defendant Suydam in her official capacity. Defendants' Motion for Summary Judgement is hereby **DENIED** in all other respects.

Accordingly, remaining before the Court is Plaintiff's Second Cause of Action, alleging violations of Tittle VII and the New Mexico Human rights Act, as to Defendant Board of Regents, and Plaintiff's Third Cause of Action, alleging a violation of § 1983, as to Defendant Suydam in her individual capacity.[3]

                                                MARTHA VÁZQUEZ
                                                DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Chris S. Key

Attorney for Defendant:
    Timothy White

---

[3] Plaintiff's First Cause of Action, alleging breach of contract, was previously remanded to state court.